## S. E. OTT v. J. E. JOHNSON.

Decided March 16, 1905.

**Negligence—Injury to Child—Tramway Cars.**

Defendant owned and operated a sawmill and a tram railroad in connection therewith. At the mill the tram cars were customarily cut loose from the engine and allowed to descend a grade of their own momentum, and come to a standstill at the bottom, after moving slowly back and forth. Children were attracted by this movement of the cars, and had been in the habit, though warned, of jumping on them and riding to the bottom of the grade. Plaintiff's son, a child of seven years, was warned of the danger and started towards home and was not in sight at the time in question when the cars were released from the engine, but before they stopped moving he ran to them and was injured in trying to get on them. Held, that it was for the jury to determine whether defendant acted in the matter as a person of ordinary prudence would have done.

Appeal from the District Court of Liberty. Tried below before Hon. L. B. Hightower.

*C. F. Stevens* and *Nugent & Foster,* for appellant.—1. The court erred in directing the jury to return a verdict for the defendant, and in not submitting the question of negligence to the jury. Railway Co. v. Murphy, 46 Texas, 366; Railway Co. v. Vallie, 60 Texas, 482; Boyd v. Burkett, 27 S. W. Rep., 224; Campbell v. Ellsworth, 20 S. W. Rep., 120.

2. Upon the point that the negligence of the defendant rendered him liable for the injury to the child, counsel cited: Railway Co. v. Morgan, 58 S. W. Rep., 546; Railway Co. v. Morgan, 46 S. W. Rep., 29; Railway Co. v. Abernathy, 68 S. W. Rep., 539; Railway Co. v. Wilson, 63 S. W. Rep., 608; Railway Co. v. Skidmore, 65 S. W. Rep., 215; Cotton Oil Co. v. Jarrard, 42 S. W. Rep., 960, 961.

*Ira P. Jones* and *H. L. Hightower, Jr.,* for appellees.—There was not actionable negligence on the part of appellee with respect to the safety of the child of the appellants in cutting the cars loose from the engine · and allowing them to roll down the grade in appellee's private mill yards, which place was not near any public street, road or thoroughfare, and said child being injured while a trespasser. The court therefore did not err in directing a verdict for the defendant. San Antonio & A. P. Ry. v. Morgan, 92 Texas, 98, 46 S. W. Rep., 28; Dublin Cotton Oil Co. v. Jarrard, 42 S. W. Rep. 959; Dobbins v. Missouri, K. & T. Ry. Co., 91 Texas, 60, 41 S. W. Rep. 62; Mexico Nat. Ry. Co. v. Crum, 6 Texas Civ App.,

702, 25 S. W. Rep., 1126; Oil Company v. Morton, 70 Texas, 404; Missouri, K. & T. R. R. Co. v. Edwards, 90 Texas, 70; Dawson v. Metal Fireproofing Co., 94 Texas, 426; Turess v. New York S. W. Ry., 11 Am. & Eng. Ry. Cases (N. S.), p. 297 and note; Delaware, I. & W. Ry. v. Reich, 11 Am. & Eng. Ry. Cases (N. S.), p. 313; Daniels v. New York & N. E. Ry. Co., 48 Am. & Eng. Ry. Cases, 539, 28 N. E. Rep., 283; Walsh v. Fitchburg Ry. Co., 27 L. R. A., 724, 145 N. Y., 301.

GILL, ASSOCIATE JUSTICE.—S. E. Ott sued J. S. Johnson to recover for the death of his minor son, Matthew, who was alleged to have met his death through the negligence of the defendant. The pleas in bar were the general denial, contributory negligence of deceased and his parents, and that the child was a trespasser to whom defendant owed no duty. After hearing the proof the trial court instructed a verdict for defendant, which was duly rendered and judgment entered accordingly. From this judgment plaintiff has appealed.

Inasmuch as the validity of the judgment depends on whether the evidence presented any issue for the jury, it is necessary to state the facts fully. The defendant was the owner of a saw mill, and in connection with it he owned and operated a tram railroad and train for the purpose of hauling logs from the forest to the mill. Within two hundred yards of the mill and near the line of the tramroad lived the plaintiff's family and three or four other families of employes of Johnson. The plaintiff had formerly lived in about fifty feet of the track, but had moved further away on account of the danger to his young children from the logging cars of defendant. From the saw mill north the tramway was down grade for about 150 yards, and from the latter point was up grade for about the same distance. Means were provided at the saw mill to supply the engine with fuel and water for its operation. The point at which the engine had to stop for fuel and water was near the saw mill machinery, and the track at that point was always wet and oily. On this account it was found very difficult to hold the engine at that point when the logging cars were attached to it. If the cars had been provided with brakes they could have been held, but they had either never been provided with brakes or else, when the brakes got out of repair, they were discarded. For more than a year prior to the accident out of which this suit arises the defendant's employes in charge of the engine and logging cars had, under Johnson's instructions, been in the habit of cutting the empty train loose from the engine when it would stop for wood and water, and allow the empty cars to roll down the grade by gravitation while the engine stood at the mill. When the cars were thus disconnected from the engine, their momentum, when they reached the foot of the grade, would carry them past that point and some distance up the grade beyond. They would then roll back and stop at the lowest point. Sometimes their momentum was such that they would pass the lowest point two or three times before coming to a full stop. No employe was placed in charge of the cars when thus released.

To put a man on them would have done no good in the absence of brakes or other means of controlling them.

The children of those living in the neighborhood of this point of the track had been in the habit of jumping on the cars after they were released and riding until they stopped. According to the plaintiffs' evidence several of the children had, with full knowledge of defendant and the operatives of the cars and without protest from them, been getting on the cars at the mill for the purpose of conveying wood for fuel to the point on the track nearest where they lived. This failure to protest is denied by defendant's witnesses, but it is undisputed that they and Johnson knew children had so gotten on the cars and ridden on many occasions. The children who thus got on the cars at the mill and rode to the bottom of the grade were the older ones who knew and realized the danger and were able to take care of themselves. It is equally undisputed that the two children of plaintiff had been warned of the danger and advised and commanded to keep off the cars.

Plaintiff's youngest son, Matthew, was at the date of the accident seven years and five months old. He had been warned and forbidden by his parents to get on the cars, and his mother had whipped him several times about it, but neither the warnings nor the punishment were effective, and this was known to defendant and the operatives of the train. It was known to all concerned that the boy persisted in mounting the cars as they passed down the grade when released. The evidence tends to show that the cars thus released and allowed to roll back and forth slowly until they stopped were especially tempting and inviting to these children, though it is also true that they seemed equally attracted by the engine and cars when standing at the mill.

On the day of the accident, while the train was at the mill and before the cars were released, the deceased and several other boys were at the mill and climbing on the engine, and the employes in charge compelled deceased to get down and go away, and he obeyed and went toward his home. His parents lived at that time about 75 yards from the track and about 200 yards from the mill. He left about ten minutes before the cars were released, and at the time the latter was done the track and the right of way was clear and deceased nowhere in sight. When the moving cars were passing the bottom of the grade he ran out from the direction of his home and attempted to mount them. According to the testimony of the older boys, who had ridden the cars from the mill down the incline, he mounted them from behind as they started up grade, and was killed in an effort to dismount when he supposed he heard the engine coming to get the cars. According to defendant's witnesses he was injured in the effort to mount the cars. But whether the one or the other story be true, the fact remains that he was killed by the moving cars at a time when no amount of precaution on the part of the operatives at the mill could have prevented it, the cars having passed out of their control.

Recovery is sought on the ground that the facts bring the case within the doctrine of the turn-table cases, and that defendant is

responsible because, when he learned that the children were attracted by the moving cars, he should have ceased to pursue that method of dropping them down the grade, or else have placed brakes upon them with men in charge.

We think the judgment should be affirmed. The mill, train, and right of way were the private property of Johnson. He had the right to adopt that method of conducting his business, but it was his duty to exercise due care with regard to those likely to be injured thereby. Had the cars collided with anyone for want of look-out or warning, it is doubtless true defendant would have been liable, unless some other defense had intervened. But here no precaution, even of a man on the cars equipped with brakes, would have prevented the boy from mounting the train. The situation was the same as if the boy had persisted in mounting the moving train drawn by the engine after it had partly passed him, or when too late to prevent his effort, and certainly it can not be held that Johnson should have ceased to pass that point with his train or put a man upon each car because the boys ignored the warning to keep off.

In this case it was the custom to sound the whistle three times before releasing the cars, and the warning was understood by all. A few minutes before their release on this occasion deceased had been sent away, and had actually gone toward home. He had apparently obeyed the warning and was nowhere in sight. The track and right of way was clear, and this the employes took the precaution to ascertain. While the general custom thus to release the cars with knowledge that it attracted the children in proximity to the track was doubtless negligent, it was perfectly safe to do so when they were not near it. Under these circumstances we do not think it was negligence, as to deceased, to release them. We think the proximate cause of his death was not the release of the cars, but his intervening act in running from a point near his home and undertaking to mount the cars.

Justice Pleasants dissents from these views, and is of opinion the case should have gone to the jury. The majority of the court are of opinion the judgment should be affirmed, and it is so ordered.

*Affirmed.*

### ON MOTION FOR REHEARING.

On reconsideration the majority of the court have concluded the affirmance of the judgment in this case was error. The members of this court have been at all times agreed upon the proposition that the evidence presented the issue of negligence on the part of appellee as to any child which he had reason to believe would likely undertake to mount the moving cars on the occasion in question, but the majority were of opinion that, as to deceased, appellee was not negligent because just before the accident deceased had been driven away, and when the cars were released appellee had no reason to suppose he would return and undertake to mount the cars as he had frequently done before within appellee's knowledge. Our conclusion necessarily involved the idea that the evidence upon this point left no room for two opinions. A review

of the evidence has led us to believe this was error, and that there was an issue for the jury.

The home of deceased and of the other children was in close proximity to the track. The appellee had full notice that the moving cars were a powerful enticement to the children, and that they had stubbornly refused to regard either the warnings of appellee and his servants or the punishment administered by the parents. Each side of the right of way was grown up with underbrush, and though deceased had been sent away about ten minutes before the accident and had apparently obeyed the command to go away and stay away, it was not known how far he had gone, how near he was to the track, or whether the enticing cars would draw him into danger as they had done theretofore. Under these facts and the other circumstances of the case the jury should have been allowed to determine the issues, including the question whether, in releasing the cars after appellee had sent deceased away, he acted as a person of ordinary prudence would have done under like circumstances.

The motion for rehearing is granted, our former judgment set aside, the judgment of the trial court reversed and the cause remanded for trial upon the merits.

*Reversed and remanded.*

Writ of error dismissed.